OPINION BY JUSTICE CLEO E. POWELL
 

 Raheem Chabezz Johnson ("Johnson") appeals the trial court's refusal to appoint a neuropsychologist at the Commonwealth's expense to assist in the preparation of his presentence report
 pursuant to Code § 19.2-299(A). Johnson further takes issue with the Court of Appeals' affirmance of the trial court's decision to impose a life sentence. According to Johnson, the life sentence imposed by the trial court was in violation of the Eighth Amendment because the trial court failed to afford him the opportunity to present evidence about youth and its attendant characteristics.
 

 I. BACKGROUND
 

 On April 11, 2011, Johnson shot and killed Timothy Irving. At the time, Johnson was two months short of his eighteenth birthday. On June 1, 2011, Johnson was indicted on eight felonies, including capital murder. After his indictment but before trial, the United States Supreme Court decided
 
 Miller v. Alabama
 
 , --- U.S. ----,
 
 132 S.Ct. 2455
 
 ,
 
 183 L.Ed.2d 407
 
 (2012). As a result, the Commonwealth amended the indictment to reduce the capital murder charge to first degree murder. A jury subsequently convicted Johnson of all eight felonies.
 

 The trial court ordered a presentence report and continued the matter for sentencing. On August 3, 2012, Johnson moved to have Joseph Conley, Ph.D. ("Dr. Conley"), a neuropsychologist, appointed at the Commonwealth's expense, to serve as an expert to assist in the preparation for his sentencing hearing. In his motion, Johnson noted that Dr. Conley had "devoted his practice to the study of the maturation of the brain and its functioning." Johnson argued that Dr. Conley would "provide relevant facts specific to Raheem C. Johnson so as 'to fully advise the court' of all matters specific to Raheem C. Johnson and allow the fashioning of a sentence in compliance with the 8th Amendment to the United States Constitution."
 

 At a hearing on the matter, Johnson argued that Dr. Conley's assistance was necessary because the probation officer charged with compiling the presentence report "does not have the ability to collect the necessary details about what is happening within [Johnson's] mind, how [Johnson's] mind has developed." Johnson asserted that Dr. Conley's "facts or unique abilities" would allow him to develop "other relevant facts needed to individualize the punishment that [the trial court] is going to have to mete out." In response, the Commonwealth stated that Johnson had not demonstrated the requisite particularized need to have Dr. Conley appointed at the Commonwealth's expense because it was "common
 sense" that a juvenile is less mature than an adult. The Commonwealth also noted that Johnson was not facing life without parole because Johnson would be eligible for geriatric parole at age 60.
 

 After considering the matter, the trial court denied Johnson's motion. The trial court noted that nothing in Johnson's record supported his position that such an evaluation was needed. It further stated that Johnson had not shown a particularized need because, in the trial court's opinion,
 
 Miller
 
 did not require such an evaluation in every case where the accused was a juvenile at the time of the offense.
 

 Prior to sentencing, Johnson submitted four articles that discuss brain development and legal culpability. At the sentencing hearing, the trial court acknowledged that it had read the articles Johnson submitted and considered them along with the presentence report and Johnson's school records. After hearing argument from the parties, the trial court stated:
 

 Mr. Johnson, in this case we had a helpless victim, the shooting was unprovoked, and it was cruel and callous. It was just mean. It was, it's as cruel and callous as anything I've seen since I've been sitting here on the bench, and that's been awhile. Just totally unnecessary to put a bullet in this young man's head.
 

 The trial court then proceeded to sentence Johnson to life in prison for the first degree murder charge plus an additional 42 years for the other seven charges.
 

 Johnson filed a motion to reconsider, arguing that the trial court failed to properly
 consider the articles he submitted and the Supreme Court's ruling in
 
 Miller
 
 before imposing Johnson's sentence. Johnson further asserted that, by imposing a life sentence, the trial court ignored the fact that, statistically, geriatric parole was not a realistic opportunity to obtain early release. The trial court denied the motion without a hearing.
 

 In a letter opinion, the trial court explained that it imposed a life sentence "after careful consideration of [Johnson's] individual characteristics as reflected in the record, including without limitation the presentence report and school records." The trial court also reiterated that it had reviewed the articles Johnson submitted. The trial court noted the "horrendous nature of the crime" and
 determined that Johnson's "history of disrespect for authority and aggressive behavior which, coupled with the brutality of the offense, make [Johnson] ... a danger to himself and others should he be returned to society."
 

 Johnson appealed the trial court's refusal to appoint a neuropsychologist and its decision to impose a life sentence to the Court of Appeals. The Court of Appeals denied Johnson's petition for appeal with regard to the denial of his motion for a neuropsychologist, but granted his petition with regard to the sentence imposed. In a published opinion, the Court of Appeals subsequently determined that, because a sentence of life did not exceed the statutory maximum penalty for first-degree murder, the trial court had not erred.
 
 Johnson v. Commonwealth
 
 ,
 
 63 Va.App. 175
 
 , 182-85,
 
 755 S.E.2d 468
 
 , 471-73 (2014). The Court of Appeals further held that, because Johnson was not facing a mandatory life sentence,
 
 Miller
 
 did not apply.
 

 Id.
 

 at 183-84
 
 ,
 
 755 S.E.2d at 472
 
 .
 

 Johnson appeals.
 

 II. ANALYSIS
 

 On appeal, Johnson argues that the Court of Appeals erred in refusing to consider his appeal related to the trial court's denial of the motion for the appointment of a neuropsychologist on his behalf at the Commonwealth's expense. Additionally, he asserts that, under
 
 Miller
 
 , the Court of Appeals erred in affirming the trial court's decision to impose a life sentence because he was not afforded the opportunity to present evidence regarding youth and its attendant consequences.
 

 A. Motion for a Neuropsychologist
 

 Johnson contends that the trial court erred in denying his motion for the appointment of a neuropsychologist on his behalf at the Commonwealth's expense because he demonstrated a particularized need for the services of a neuropsychologist. Johnson asserts that he demonstrated the requisite "particularized need" established by this Court in
 
 Husske v. Commonwealth
 
 ,
 
 252 Va. 203
 
 ,
 
 476 S.E.2d 920
 
 (1996). He also relies on the fact that Code § 19.2-299(A) requires that a presentence report include "other relevant facts." Johnson claims that evidence relating to his
 physiology or psychology were such "other relevant facts." Thus, according to Johnson, even in the absence of showing a particularized need, the services of a neuropsychologist were necessary to provide a complete presentence report. He further asserts that such evidence was necessary to allow the trial court to "tailor" the punishment to him. We disagree.
 

 This Court has recognized that, upon request, the Commonwealth is required to "provide indigent defendants with 'the basic tools of an adequate defense.' "
 
 Husske
 
 , 252 Va.at 211,
 
 476 S.E.2d at 925
 
 (quoting
 
 Ake v. Oklahoma
 
 ,
 
 470 U.S. 68
 
 , 77,
 
 105 S.Ct. 1087
 
 ,
 
 84 L.Ed.2d 53
 
 (1985) ). However, "an indigent defendant's constitutional right to the appointment of an expert, at the Commonwealth's expense, is not absolute."
 

 Id.
 

 Rather,
 

 an indigent defendant who seeks the appointment of an expert witness, at the Commonwealth's expense, must demonstrate that the subject which necessitates the assistance of the expert is "likely to be a significant factor in his defense," and that he will be prejudiced by the lack of expert assistance. An indigent defendant may satisfy this burden by demonstrating that the services of an expert would materially assist him in the preparation of his defense and that the denial of such services would result in a fundamentally unfair
 trial. The indigent defendant who seeks the appointment of an expert must show a particularized need....
 

 Id.
 

 at 211-12
 
 ,
 
 476 S.E.2d at 925
 
 (quoting
 
 Ake
 
 ,
 
 470 U.S. at 82-83
 
 ,
 
 105 S.Ct. 1087
 
 ).
 

 Furthermore, "[w]hether a defendant has made the required showing of particularized need is a determination that lies within the sound discretion of the trial court."
 
 Commonwealth v. Sanchez
 
 ,
 
 268 Va. 161
 
 , 165,
 
 597 S.E.2d 197
 
 , 199 (2004) (citing
 
 Husske
 
 ,
 
 252 Va. at 212
 
 ,
 
 476 S.E.2d at 926
 
 , and other case authority). "A particularized need is more than a 'mere hope' that favorable evidence can be obtained through the services of an expert."
 
 Green v. Commonwealth
 
 ,
 
 266 Va. 81
 
 , 92,
 
 580 S.E.2d 834
 
 , 841 (2003) (quoting
 
 Husske
 
 ,
 
 252 Va. at 212
 
 ,
 
 476 S.E.2d at
 
 925-26 ). In the present case, Johnson admitted that he sought the services of a neuropsychologist because there was no other evidence regarding his physiology or psychology. In other words, Johnson sought the
 assistance of an expert at the Commonwealth's expense with no idea what evidence might be developed or whether it would assist him in any way. At best, Johnson's request for a neuropsychologist amounted to a mere hope that favorable evidence would be obtained. Thus, it cannot be said that Johnson demonstrated a particularized need for the assistance of a neuropsychologist.
 

 Johnson next argues that, under Code § 19.2-299(A), he was entitled to the appointment of a neuropsychologist independent of any showing of a particularized need. Code § 19.2-299(A) states that, upon a finding of guilt, a trial court may (or, under certain circumstances, shall) direct a probation officer to
 

 thoroughly investigate and report upon the history of the accused, including a report of the accused's criminal record as an adult and available juvenile court records, any information regarding the accused's participation or membership in a criminal street gang as defined in § 18.2-46.1,
 
 and all other relevant facts
 
 , to fully advise the court so the court may determine the appropriate sentence to be imposed.
 

 Id.
 

 (emphasis added).
 

 Nothing in the plain language of Code § 19.2-299(A) specifically requires a probation officer to investigate a defendant's current physiology or psychology.
 
 [1]
 
 Indeed, the statute expressly limits the subject of the probation officer's investigation and report to "the
 
 history
 
 of the accused."
 

 Id.
 

 (emphasis added). When read in context, it is clear that the phrase "all other relevant facts" is used to describe additional historical information that may be relevant to the probation officer's investigation and report.
 

 Thus, it is clear that Code § 19.2-299(A) does not envision the appointment of a neuropsychologist to augment the presentence report. That said, however, if information regarding a
 defendant's physiology or psychology exists in a defendant's history, that information might well be included as "other relevant facts" in the presentence report. Moreover, such information could be used as part of the showing necessary to demonstrate a "particularized need" under
 
 Husske
 
 or presented as "additional facts bearing upon the matter" in response to the presentence report.
 
 See
 
 Code § 19.2-299(A). Accordingly, the trial court did not abuse its discretion in denying Johnson's motion for the appointment of a neuropsychologist at the Commonwealth's expense and the Court of Appeals did not err in upholding this determination.
 
 [2]
 
 B. Life Sentence
 

 Johnson next argues that the trial court erred in sentencing him to life in prison. Relying on the Supreme Court's decision in
 
 Miller v. Alabama
 
 , Johnson claims that, because he was still a juvenile on the date that he committed the crimes, the trial court was required to consider the psychological differences between adults and juveniles before imposing a life sentence. Johnson further contends that, in the absence of such consideration, the sentence imposed by the trial court was not individualized and, therefore, violated the Eighth Amendment. However, we conclude that
 
 Miller
 
 is inapplicable to the present case. Therefore, the trial court did not err.
 

 In
 
 Miller
 
 , the Supreme Court held that a sentence of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' "
 
 132 S.Ct. at 2460
 
 . However, by its plain language,
 
 Miller
 
 only applies where a juvenile offender is sentenced to a term of life
 
 without parole
 
 . Notably, the Supreme Court's analysis in
 
 Miller
 
 is founded, in part, on the notion that sentencing a juvenile to life in prison is a disproportionate sentence because a juvenile sentenced to life without parole is analogous to capital punishment.
 

 Id.
 

 at 2466
 
 . In contrast, "[a]llowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity-and who have since matured-will not be forced to serve a disproportionate sentence in
 violation of the Eighth Amendment."
 
 Montgomery v. Louisiana
 
 , --- U.S. ----,
 
 136 S.Ct. 718
 
 , 736,
 
 193 L.Ed.2d 599
 
 (2016). Indeed, it is particularly telling that the remedy for a
 
 Miller
 
 violation is to "permit juvenile homicide offenders to be considered for parole."
 

 Id.
 

 Thus it is clear that
 
 Miller
 
 does not apply when a juvenile offender has the opportunity to be considered for parole.
 

 In
 
 Angel v. Commonwealth
 
 ,
 
 281 Va. 248
 
 , 275,
 
 704 S.E.2d 386
 
 , 402 (2011), we held that the possibility of geriatric release under Code § 53.1-40.01
 
 [3]
 
 provides a meaningful opportunity for release that is akin to parole. As Johnson was convicted of a Class 2 felony, he will be eligible for geriatric release under Code § 53.1-40.01 when he turns 60 in 2053, in which case the possibility exists that Johnson's sentence of life imprisonment will convert into a sentence of approximately forty years.
 
 [4]
 
 Thus, it is readily apparent that, under this Court's jurisprudence, Johnson was only sentenced to life in prison; he was not sentenced to life without parole. Accordingly, Johnson's reliance on
 
 Miller
 
 is misplaced.
 

 III. CONCLUSION
 

 Having failed to demonstrate the requisite particularized need for the appointment of a neuropsychologist at the Commonwealth's expense, Johnson has failed to show any abuse of discretion in the decision of the trial court that mandated review by the Court of Appeals. Additionally, as Code § 53.1-40.01 provides Johnson with
 a meaningful opportunity for parole when he turns 60,
 
 Miller
 
 has no application to the present case. Accordingly, we find no reversible error in the judgment
 of the Court of Appeals and we will affirm the decisions of the trial court.
 

 Affirmed.
 

 Notably, Code § 19.2-299(A) only describes the investigation that must be conducted by the probation officer and the contents of that probation officer's report. Although the statute provides a defendant with an opportunity to "present any additional facts bearing upon the matter," such an opportunity only arises
 
 after
 
 the probation officer has completed his investigation and submitted his report. Similarly, the statute is silent on the manner in which such facts may be developed.
 

 Johnson also asserts that the Supreme Court's decision in
 
 Miller
 
 further demonstrates the requisite "particularized need." However, as discussed below, Johnson's reliance on
 
 Miller
 
 is misplaced and, therefore, we need not address whether the applicability of
 
 Miller
 
 to a specific case can provide a "particularized need" under the proper circumstances.
 

 Code § 53.1-40.01 states:
 

 Any person serving a sentence imposed upon a conviction for a felony offense, other than a Class 1 felony, (i) who has reached the age of sixty-five or older and who has served at least five years of the sentence imposed or (ii) who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole Board for conditional release. The Parole Board shall promulgate regulations to implement the provisions of this section.
 

 While Johnson makes much about the low statistical probability of release under Code § 53.1-40.01, we find his argument to be, at present, speculative because the statistical data Johnson relies on does not include juvenile offenders. Indeed, as has been recently noted,
 

 The geriatric release program was not implemented until 1994. See 1994 Acts (Sp. Sess. II) 1, 2 (enacting Code § 53.1-40.01 ). A hypothetical 17-year old sentenced to a life sentence or a de facto life sentence in 1995 will not be eligible for geriatric release until 2038. Moreover, inmates who committed their crimes before January 1, 1995 are still eligible for traditional parole. See Code §§ 53.1-151, 53.1-165.1. Accordingly, a number of inmates, who would be eligible for geriatric release, obtain release through traditional parole instead.
 

 Vasquez v. Commonwealth
 
 ,
 
 291 Va. 232
 
 , 258 n. 4,
 
 781 S.E.2d 920
 
 , 935 n.4 (2016) (Mims, J., concurring).