COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, O'Brien and Fulton
Argued by videoconference

UNPUBLISHED

LINWOOD GEQUAN WALDEN

MEMORANDUM OPINION* BY
v.      Record No. 1376-20-2          JUDGE JUNIUS P. FULTON, III
FEBRUARY 22, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Meghan Shapiro, Senior Assistant Public Defender, Appellate
Cohort (Virginia Indigent Defense Commission, on briefs), for
appellant.

Susan Brock Wosk, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


The trial court convicted appellant of two counts of robbery and two counts of abduction

with the intent to obtain pecuniary benefit. The issue on appeal is whether the trial court abused

its discretion by denying Walden's request for funds to hire a mitigation expert to testify at his

sentencing. We conclude that the trial court's decision was neither plainly wrong nor without

evidentiary support. We therefore affirm.

I. BACKGROUND

On January 21, 2020, in a bench trial, the trial court found Walden guilty of two counts of

robbery and two counts of abduction with the intent to obtain pecuniary benefit. A presentence

investigation report was ordered and a sentencing date set. After the presentence report was

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

completed and prior to the sentencing hearing, Walden's counsel sought funds to retain an independent defense expert for consultation and evaluation of Walden to be utilized for purposes of mitigation at his sentencing hearing. At the motion hearing on this issue on September 30, 2020, Walden's counsel argued that the requested funds would allow "the ability to have him investigated, see what underlying mental health issues there are or may be that would impact his cognitive properties." There was no assertion that Walden was currently demonstrating any signs or symptoms of mental illness. Walden specifically moved the trial court for "release of court funds" to hire a psychologist to evaluate him, prepare a written report, and potentially testify at the sentencing hearing "to aid in explaining mitigating evidence at sentencing." Walden's counsel proffered that Walden had been diagnosed with bipolar disorder as a juvenile and suffered "family trauma as a child and as an adult, including domestic violence." Walden's counsel further proffered that Walden's mother contracted HIV after being "sexually assaulted and robbed in an alley" when he was six years old and she "coped" by using "crack cocaine." When Walden was thirteen, he lived with his aunt, who beat him with her fists and frying pans. Walden left his aunt's house and was homeless for two weeks before moving in with his father, mother, and mother's boyfriend. In addition, counsel proffered that three of Walden's children had died while they were all under the age of three.

Walden asserted that, if his motion was granted, the psychologist would (1) evaluate how the above mental health history and trauma "contribute[d] to the current situation" and underlying offenses, and (2) assist the trial court in fashioning a "plan" for moving forward that protected Walden and the community after his incarceration. Walden maintained that he had lashed out because of his "emotional trauma" and a mitigation expert could expand his ability to address that trauma, inhibit impulses, and control his behavior. Walden argued that he would be prejudiced without such an expert because he would not be able to "explore . . . how this

- 2 -

happened, how he came to be here, and, most importantly, how we can fix it moving forward." His request was aimed at addressing recidivism concerns with the goal of contributing to a lower sentence.

The Commonwealth, objecting to the motion, cited the "very detailed" presentence investigation report which in many ways contradicted the defense proffer, in which Walden described his "current health as good" and reported that he had "no history of mental health treatment," stated that he "received love, guidance and discipline" as a child, and that there was "no alcohol or drug use in his family life." Moreover, Walden reported that he had "adequate food, clothes and shelter" and suffered "[n]o type of abuse." Walden did report one death — the tragic loss of his three-year-old daughter in 2016.

The trial court cited Walden's statements in the presentence report and, "based upon that," found that Walden had not demonstrated a particularized need for a mitigation expert. Accordingly, the court denied Walden's motion. Walden renewed his motion for expert funds at the beginning of his sentencing hearing but did not, at that time, present or proffer any additional evidence in support of the motion. The trial court found that Walden had not presented "any further information" and denied his renewed motion.

## II. STANDARD OF REVIEW

Whether an indigent defendant has made the required showing of particularized need for expert assistance "is a determination that lies within the sound discretion of the trial court." *Johnson v. Commonwealth*, 292 Va. 772, 778 (2016) (quoting *Commonwealth v. Sanchez*, 268 Va. 161, 165 (2004)).

## III. ANALYSIS

The trial court did not err in concluding that Walden failed to present a particularized need for a mitigation expert. The Commonwealth is required, "upon request, [to] provide

indigent defendants with 'the basic tools of an adequate defense.'" *Husske v. Commonwealth*, 252 Va. 203, 211 (1996) (citing *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985)). "[I]n certain instances, these basic tools may include the appointment of non-psychiatric experts." *Id.* Nevertheless, an indigent defendant's right to the appointment of an expert "is not absolute." *Johnson*, 292 Va. at 778 (quoting *Husske*, 252 Va. at 211). Instead, an indigent defendant "must demonstrate that the subject which necessitates the assistance of an expert is 'likely to be a significant factor in his defense' and that he will be prejudiced by the lack of expert assistance." *Id.* (quoting *Ake*, 470 U.S. at 82-83). That is, he "must show a particularized need." *Id.* "A particularized need is more than a 'mere hope' that favorable evidence can be obtained through the services of an expert." *Green v. Commonwealth*, 266 Va. 81, 92 (2003) (quoting *Husske*, 252 Va. at 212). Rather, it amounts to a "demonstrat[ion] that the services of an expert would materially assist [the defendant] in the preparation of his defense and that the denial of such services would result in a fundamentally unfair trial." *Johnson*, 292 Va. at 778. "[W]hether a defendant has made the required showing of particularized need is a determination that lies within the sound discretion of the trial court." *Id.* (quoting *Sanchez*, 268 Va. at 165).

Here, the record demonstrates that Walden's proffers regarding his family dysfunction, abuse, and mental health were either expressly contradicted or inconsistent with the statements he made to the probation officer who prepared the presentence investigation report. The July 1, 2020 presentence investigation report, which was available to the trial court at the motion hearing, indicated that "Walden reports no history of mental health treatment." The report did not indicate whether Walden volunteered or was asked about any current or prior mental health diagnoses. The report did, however, reflect that Walden indicated that he was raised by both parents in a single-family dwelling where "[h]e was provided adequate food, clothes, and shelter. He received love, guidance and discipline. Education and religion were emphasized in the

household.  No type of abuse reported.  He reports no alcohol or drug use in his family life."
The report also mentioned that Walden lost his three-year-old daughter to homicide on February 15, 2016.

The portrait of Walden's life offered to the probation officer preparing the report was in stark contrast to the proffers made by defense counsel in support of the motion for expert funds. In support of his motion, Walden's counsel proffered that Walden may have received a bipolar diagnosis as a juvenile.  Defense counsel's proffer was based on information from Walden's mother that "he was maybe diagnosed."  Walden did not provide any supporting documentation at the time of his motion hearing nor was there any allegation that he was currently suffering from any mental illness.  Further, there was no indication in the trial court record of any concern about Walden's mental capacity nor did the Commonwealth indicate that it planned to present any psychiatric testimony at the sentencing hearing regarding Walden's future dangerousness or propensity to commit crimes.  Walden's stated purpose for requesting funds for the expert was so the expert could conduct "a comprehensive psychological evaluation and . . . talk about the developmental impact of psycho-social trauma and head trauma."  Also such an expert could, in large part, "see what underlying mental health issues there are or may be" so as to "help[] his case and help[] for when he is released to reduce the risk of recidivism and to make the community safer."  Walden argued that denial of the expert funds would significantly prejudice him by preventing him from exploring his childhood trauma and mental health issues as well as precluding him from developing a plan to address any recidivism concerns.  The Commonwealth challenged the weight to be given to Walden's counsel's proffer largely because of the

contradictory evidence contained in the presentence report, and the trial court evaluated the evidence before it in making its decision.[2]

Because of Walden's statements during the presentence investigation about his stable family life and pleasant childhood, the trial court gave little weight to his contrary proffers regarding his family dysfunction and abuse and the death of his three young children. The trial court also found the proffers regarding Walden's potential prior mental health diagnosis to be "insufficient," in light of the lack of any allegation of current mental illness or medical documentation indicating a past diagnosis as well as Walden's mother's self-interest and apparent credibility issues. *Bethea v. Commonwealth*, 297 Va. 730, 756 n.13 (2019) (noting that even if a proffer is properly admitted, the rules of evidence "say[] nothing about the evidentiary weight the factfinder may or should give to the proffer" (citing *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001))).

In light of the trial court's determination that Walden's proffers were insufficient to satisfy the legally required threshold showing, Walden's motion for expert funds was denied. That determination is neither plainly wrong nor without evidentiary support. Like in *Hoverter v. Commonwealth*, 23 Va. App. 454 (1996), Walden hoped that expert assistance would develop mitigation evidence that would lead to leniency in sentencing. But "a mere hope or suspicion that favorable evidence may result from an expert's services does not create a constitutional mandate." *Id.* at 467. *Husske* requires that the subject matter necessitating assistance of an

---

[2] This was not an instance of a proffer offered without any resistance to its merits. The Commonwealth challenged the weight to be given to the proffers in light of the contradictory evidence in the record, namely the presentence investigation report. It was then up to the trial court to weigh the proffered evidence, and it did. The fact-finder must independently "determine[] the weight of the evidence" admitted, including proper proffers. *Bethea v. Commonwealth*, 297 Va. 730, 756 n.13 (2019) (quoting *Bloom v. Commonwealth*, 262 Va. 814, 821 (2001).

expert is "likely to be a significant factor in his defense" and that the defendant "will be prejudiced by the lack of an expert." *Husske*, 252 Va. at 211 (internal quotations omitted). Walden's desire to address recidivism concerns that might be present at his sentencing is understandable but all he offered in support was mere speculation that he *might* have a mental illness. His claim was not based on any current symptomatology, but on an uncorroborated possible history of a bipolar diagnosis as a juvenile and contradicted assertions of family dysfunction and abuse. Surely every defendant could justify a request for expert funds if the test only required an allegation that they *might* benefit from a psychological expert, but that is not the standard nor is it the Commonwealth's burden to fund such an expert in every case. Under these facts where the trial court had to weigh a defendant's proffer against contrary evidence in the record that had largely been supplied by the defendant himself, the trial court did not abuse its discretion by giving the proffer little weight and holding that Walden failed to demonstrate a particularized need for expert assistance. We will not disturb the trial court's ruling on appeal. Code § 8.01-680.

## IV. CONCLUSION

Because the trial court's decision to deny Walden's request for expert funds was not plainly wrong or without evidentiary support, we affirm.

*Affirmed.*