PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and Huff
Argued at Salem, Virginia

RAHEEM CHABEZZ JOHNSON

OPINION BY
v.        Record No. 1941-12-3        JUDGE RANDOLPH A. BEALES
MARCH 25, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

B. Leigh Drewry, Jr. (Cunningham and Drewry, on brief), for
appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.

Raheem Chabezz Johnson (appellant) appeals the trial court's decision to impose a life

sentence for appellant's first-degree murder conviction under Code § 18.2-32.[1]  In his

assignment of error that is before this Court, appellant alleges that the trial court "ignored his

individuality and the holding of Miller v. Alabama, 132 S. Ct. 2455 (2012)."  For the following

reasons, we affirm appellant's life sentence for first-degree murder.

---

[1] In addition to the life sentence, appellant was also sentenced to a total of forty-two years for several other offenses – i.e., statutory burglary, two counts of attempted robbery, and four counts of using a firearm during the commission of a felony.  Appellant has not challenged the sentences for those convictions on appeal.  Furthermore, an appeal was not granted on assignments of error alleging that the trial court erred by denying appellant's motion to strike the statutory burglary and attempted robbery charges, erred by improperly instructing the jury on the issue of eyewitness identification, erred by denying appellant's request for the appointment of a neuropsychologist, and erred with respect to the preparation of the trial transcripts.

## I. BACKGROUND

Under settled principles of appellate review, we view "the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party" in the trial court. Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004). On April 11, 2011, about two months before appellant's eighteenth birthday, appellant and a co-defendant planned to rob the victim. After appellant and the co-defendant entered the victim's residence, appellant produced a handgun and ordered the victim to a bedroom. While the victim was on his knees looking in his bedroom closet for money, appellant shot the victim in the head. The victim's girlfriend and two-year-old son were in the bedroom and, thus, were forced to watch the murder of the victim.

On June 1, 2011, a grand jury indicted appellant on eight felony charges, including capital murder. Code § 18.2-31 classifies capital murder as a Class 1 felony. For defendants, such as appellant, who were under eighteen years of age at the time of the offense, Code § 18.2-10(a) states that the punishment for a Class 1 offense is life imprisonment. Furthermore, inmates who have been convicted of Class 1 felonies are not eligible to apply for conditional release under the geriatric parole statute, Code § 53.1-40.01.[2]

On June 25, 2012, prior to appellant's trial, the United States Supreme Court held in Miller, 132 S. Ct. at 2469, that "the Eighth Amendment forbids a sentencing scheme that

---

[2] Code § 53.1-40.01 states,

> Any person serving a sentence imposed upon a conviction for a felony offense, other than a Class 1 felony, (i) who has reached the age of sixty-five or older and who has served at least five years of the sentence imposed or (ii) who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole Board for conditional release. The Parole Board shall promulgate regulations to implement the provisions of this section.

mandates life in prison without possibility of parole for juvenile offenders." In response to the decision in <u>Miller</u>, the Commonwealth moved to amend the capital murder indictment to change it to a charge of first-degree murder. Code § 18.2-32 classifies first-degree murder as a Class 2 felony, and Code § 18.2-10(b) states that Class 2 felonies are punishable by a range of twenty years to life imprisonment. Furthermore, inmates who have been convicted of Class 2 felonies are eligible to apply for conditional release under the geriatric parole statute. <u>See</u> Code § 53.1-40.01. The trial court granted the Commonwealth's motion to amend the indictment against appellant to a charge of first-degree murder, and appellant has not challenged that decision on appeal.

Following the jury's verdict convicting appellant of first-degree murder, among other offenses, the trial court sentenced appellant as a juvenile offender pursuant to Code § 16.1-272(A). In anticipation of sentencing, appellant's counsel submitted to the trial court a series of articles that addressed adolescent brain development. According to appellant's counsel, these articles supported a finding that the brain of a person who is appellant's age at the time that these offenses occurred has not completely grown and developed. Based on these articles, appellant's counsel contended that the trial court should not consider appellant as culpable as a fully mature adult would be. The Commonwealth, in turn, submitted documents from the City of Lynchburg Public Schools that detailed, *inter alia*, the many suspensions that appellant had received – including several that involved acts of violence.[3]

---

[3] Included in these documents was a report from appellant's principal explaining why appellant was suspended from school for ten days in January 2009. The principal wrote:

> On January 21, 2009 at approximately 9:05 a.m. Raheem was involved in a fight with another student in front of the school building. Raheem initiated the confrontation by punching and then slamming the other individual to the ground. This referral is Raheem's 12[th] referral for the 2008-09 school year. He has previously been suspended from school for 22 days. Raheem is a habitual offender. . . . This is to notify you that I am suspending

In addition, the probation officer prepared a presentence report that was presented to the trial court and to the parties prior to sentencing. The presentence report indicated that many prior juvenile petitions had been filed against appellant, with several of those petitions resulting in probation or adjudications of guilt.[4] The presentence report also stated that appellant had been a member of the Bloods gang since he was about thirteen years old and that appellant admitted to a juvenile and domestic relations district court officer in August 2008 that he had risen to "the rank of 2-Star General" in that gang.

At the sentencing hearing, the Commonwealth argued that a life sentence for appellant's first-degree murder conviction was appropriate. In support of this argument, the prosecutor contended that appellant's prior record was "atrocious," that appellant's murder of the victim was "brutal," "heartless," and "sick,"[5] and that a life sentence would "guarantee the next two to three generations of Lynchburg residents that this defendant will no longer harm anyone on our streets." The prosecutor noted that appellant would be eligible to apply for geriatric parole at age sixty and asserted that it should be the role of "the geriatric parole board to make the

---

Raheem for 10 school days and that I will forward a recommendation to the superintendent that the school board consider a long-term suspension/alternative educational placement.

In addition, it appears that appellant was suspended at least twice during the 2009-10 school year after hitting other students.

[4] For example, in November 2005, Johnson was charged with assault and battery. After being placed on probation, appellant was found guilty of a probation violation in February 2006. Appellant was also found guilty of disorderly conduct in April 2006. Johnson was then charged with assault and battery and brandishing a firearm in April 2008, and he was found guilty of that assault and battery offense in June 2008. Appellant remained on supervised probation until March 2010.

[5] The victim's mother and the victim's girlfriend both testified at the sentencing hearing. The victim's girlfriend, who had dated the victim for eight years and is the mother of the victim's son, testified at sentencing that her then-three-and-a-half-year-old son "knows who his father is." She testified that the victim's death has been especially difficult for their son (who witnessed his father's murder), adding, "He remembers everything."

- 4 -

determination whether it's ever safe for him to be released again." In response, appellant's counsel relied on the United States Supreme Court's decision in <u>Miller</u> for the view that "juveniles are different." Appellant's counsel asserted, "Whether you are an adult at eighteen by the law does not negate the psychological and scientific evidence that you remain a juvenile with regard to the development of the brain until your mid-twenties." Appellant's counsel requested that the trial court impose a total sentence that was within the recommended sentencing guidelines range of twenty-eight years, two months and forty-seven years of imprisonment.

The trial court decided to impose a life sentence for the first-degree murder conviction, explaining from the bench at the sentencing hearing:

> [I]n this case we had a helpless victim, the shooting was unprovoked, and it was cruel and callous. It was just mean. It was, it's as cruel and callous as anything I've seen since I've been sitting here on the bench and that's been awhile. Just totally unnecessary to put a bullet in this young man's head.

Appellant's counsel filed a motion for reconsideration. Summarizing the ways in which he alleged that the trial court had erred at sentencing, appellant's counsel argued in the motion for reconsideration, "Nothing announced in the court's imposition of sentence demonstrates an individualized sentencing taking into consideration the various characteristics of Raheem Chabezz Johnson detailed in the presentence report, the trial of the case, or the scientific studies of the brain received by the Court."

The trial court denied the motion for reconsideration in a written order that also incorporated a letter opinion, in which the trial court found:

> The life sentence was imposed after careful consideration of your client's individual characteristics as reflected in the record, including without limitation, the presentence report and school records. The materials submitted with your letter dated September 4, 2012 were reviewed. The sentencing guidelines were also considered and felt to be inappropriate due to the horrendous nature of the crime. Raheem Chabezz Johnson has a history of disrespect for authority and aggressive behavior which,

coupled with the brutality of the offense, make him, in my opinion, a danger to himself and others should he be returned to society.

## II. ANALYSIS

### A. SENTENCING IN VIRGINIA

Virginia's law pertaining to appellant's appeal of his sentence is well established.

> We review the trial court's sentence for abuse of discretion. Valentine v. Commonwealth, 18 Va. App. 334, 339, 443 S.E.2d 445, 448 (1994). Given this deferential standard of review, we will not interfere with the sentence so long as it "'was within the range set by the legislature'" for the particular crime of which the defendant was convicted. Jett v. Commonwealth, 34 Va. App. 252, 256, 540 S.E.2d 511, 513 (2001) (quoting Hudson v. Commonwealth, 10 Va. App. 158, 160-61, 390 S.E.2d 509, 510 (1990)).

Scott v. Commonwealth, 58 Va. App. 35, 46-47, 707 S.E.2d 17, 23 (2011); see Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977) ("We have held in numerous cases that when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion."); see also Rawls v. Commonwealth, 272 Va. 334, 351, 634 S.E.2d 697, 706 (2006); Williams v. Commonwealth, 270 Va. 580, 584, 621 S.E.2d 98, 100 (2005); cf. Code § 19.2-298.01(F) (stating that a trial court's decision not to follow the discretionary sentencing guidelines range "shall not be reviewable on appeal or the basis of any other post-conviction relief").

In this case, appellant was convicted of first-degree murder. That offense is a Class 2 felony, which is punishable by a statutory sentencing range of twenty years to life imprisonment. See Code § 18.2-32; see also Code § 18.2-10(b). The trial court sentenced appellant to life imprisonment for the first-degree murder conviction. That sentence did not exceed the statutory maximum penalty for first-degree murder. Accordingly, "the sentence will not be overturned as being an abuse of discretion" under Virginia law. Abdo, 218 Va. at 479, 237 S.E.2d at 903.

Nevertheless, appellant argues that the United States Supreme Court's recent decision in Miller requires this Court to reverse his life sentence for first-degree murder as a matter of federal constitutional law.  Neither this Court nor the Supreme Court of Virginia previously has addressed Miller in a published opinion.  To the extent that appellant's argument under Miller raises a question of constitutional interpretation, that issue is reviewed *de novo*.  Lawlor v. Commonwealth, 285 Va. 187, 240, 738 S.E.2d 847, 877 (2013).

## B.  THE DECISION IN MILLER V. ALABAMA

The United States Supreme Court limited its review in Miller to the constitutionality of *mandatory sentencing statutes* that provide sentencing courts *no discretion* to sentence juvenile offenders to anything other than life sentences *without the possibility of parole*.  Indeed, the first paragraph of the majority opinion in Miller summarizes the issue before the Supreme Court and states the scope of its holding as a matter of constitutional law:

> The two 14-year-old offenders in this case were convicted of murder and sentenced to life imprisonment *without the possibility of parole*.  In neither case did the sentencing authority have *any discretion* to impose a different punishment.  State law *mandated* that each juvenile die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life with the possibility of parole) more appropriate.  Such a scheme prevents those meting out punishment from considering a juvenile's "lessened culpability" and greater "capacity for change," Graham v. Florida, 560 U. S. ___, ___ (2010) (slip op., at 17, 23), and runs afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties. *We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on "cruel and unusual punishments."*

Miller, 132 S. Ct. at 2460 (emphasis added); see also id. at 2461, 2463 (explaining that both juvenile defendants who petitioned the Supreme Court in Miller were sentenced under state statutes that mandated life without the possibility of parole for their offenses).  The Supreme Court then repeated its central holding in Miller – i.e., that a mandatory life sentence without the

- 7 -

possibility of parole for juvenile offenders violates the Eighth Amendment's prohibition against cruel and unusual punishments – at least two more times later in the majority opinion. See id. at 2468, 2475.

Thus, the Supreme Court clearly did not hold in Miller that *all* life sentences for juvenile offenders violate the Eighth Amendment. The Supreme Court in that case addressed a specific type of life sentence – a *mandatory* life sentence *without the possibility of parole*.[6] The Supreme Court expressly *declined* to consider in Miller whether "the Eighth Amendment requires a categorical bar" on all life sentences without the possibility of parole for juvenile offenders. See id. at 2469 ("[W]e do not consider [the petitioners'] alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger."). The Supreme Court's actual holding in Miller states that "the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders." Id. (emphasis added).

C. APPELLANT'S SENTENCE WAS WITHIN THE TRIAL COURT'S DISCRETION

It is plainly evident that the life sentence imposed by the trial court here passes the United States Supreme Court's test for constitutionality that it expressed in Miller. An Eighth Amendment violation occurred in Miller, in the view of the Supreme Court, because the fourteen-year-old defendants were automatically sentenced to mandatory terms of life imprisonment without the possibility of parole for their offenses. By contrast, as discussed *supra*, the trial court here indisputably had the discretion to sentence appellant to a term that ranged from twenty years to life imprisonment for the first-degree murder that appellant

---

[6] The majority opinion in Miller simply cannot be read outside of the context of a life sentence without the possibility of parole. Indeed, the phrases "without parole," "without the possibility of parole," and "life-without-parole" appear approximately seventy times in the majority opinion in Miller.

committed about two months before his eighteenth birthday.  That discretion alone places this

case clearly outside of the category of cases that the Supreme Court addressed in Miller.[7]

Ultimately, the trial court found that a life sentence for appellant's first-degree murder of

the victim was appropriate because appellant's prior record, "coupled with the brutality of the

offense," made appellant "a danger to himself and others should he be returned to society."  To

hold that the trial court somehow lacked the discretion to impose a life sentence under the

circumstances of this case would require us to step far outside the United States Supreme Court's

holding in Miller – which addresses statutes *mandating* life sentences without the possibility of

parole for juvenile offenders.  In addition, the Supreme Court of Virginia has already held that

geriatric parole under Code § 53.1-40.01 (for which appellant will be eligible to apply at age

sixty) represents a "meaningful opportunity to obtain release based on demonstrated maturity and

rehabilitation" for purposes of the Eighth Amendment.  Angel v. Commonwealth, 281 Va. 248,

---

[7] Furthermore, contrary to appellant's argument on appeal, the trial court here actually *did* render an "individualized" sentencing decision in this case.  See Miller, 132 S. Ct. at 2475 (noting that the Supreme Court's recent "individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles" (citing Graham v. Florida, 560 U.S. 48 (2010), and Roper v. Simmons, 543 U.S. 551 (2005))).  In its letter opinion denying appellant's motion to reconsider – which the trial court incorporated in its final order – the trial court expressly stated that appellant's "life sentence was imposed after careful consideration of [appellant's] *individual* characteristics as reflected in the record" before the trial court at the time of sentencing.  (Emphasis added).  The trial court's statements indicating that it sentenced appellant on an individualized basis speak for themselves, and this Court will not second-guess them.  See McBride v. Commonwealth, 24 Va. App. 30, 35, 480 S.E.2d 126, 128 (1997) ("A court speaks through its orders and those orders are presumed to accurately reflect what transpired.").

As the trial court explained in its letter opinion, it considered the contents of the presentence report and appellant's school records.  The trial court also explained that it reviewed the articles on adolescent brain development submitted by appellant's trial counsel.  The trial court's decision not to accord those articles significant weight certainly will not be disturbed on appeal – given that the trial court exercised its discretion in selecting an appropriate sentence for appellant within the statutory sentencing range.  See Williams, 270 Va. at 584, 621 S.E.2d at 101.  The trial court also considered, but rejected, the range of recommended sentences under the sentencing guidelines, and that decision is not reviewable on appeal.  See Code § 19.2-298.01(F).

275, 704 S.E.2d 386, 402 (2011). Accordingly, it is clear that appellant's life sentence for the horrific first-degree murder of the victim in this case must be affirmed.

### III. CONCLUSION

The trial court, in its discretion, sentenced appellant to life imprisonment for first-degree murder. This sentence was proper under Virginia law, given that life imprisonment is within the sentencing range for first-degree murder. Furthermore, the United States Supreme Court's decision in <u>Miller</u> simply does not apply here because <u>Miller</u> concerns the mandatory imposition of life imprisonment without the possibility of parole for juvenile offenders. Accordingly, for the foregoing reasons, we affirm appellant's life sentence for his first-degree murder conviction.

<u>Affirmed.</u>