UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Decker and Russell
Argued at Virginia Beach, Virginia


RAMON MONTRELL WILLIAMS

MEMORANDUM OPINION* BY
v.         Record No. 1978-16-1          JUDGE WESLEY G. RUSSELL, JR.
SEPTEMBER 5, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Junius P. Fulton, III, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Pursuant to separate plea agreements, Ramon Montrell Williams, appellant, pled guilty to

possession of ammunition by a convicted felon, forgery of a public record, malicious wounding,

assault and battery, use of a firearm in the commission of a felony, and two counts of possession of

a firearm by a convicted felon. On appeal, he claims the trial court abused its discretion in

sentencing him to three years of active incarceration on the malicious wounding charge. We

disagree and affirm.

BACKGROUND

There is no dispute that Williams committed the offenses for which he was convicted. He

pled guilty in the trial court and, to his credit, explicitly accepted responsibility for his actions.

Accordingly, we need not recite all of the facts regarding his various offenses. Rather, because he

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

challenges only his sentence on appeal, we recite only those facts germane to his appellate argument.

## I.  September 2, 2015 Indictment

On September 2, 2015, the grand jury of the City of Norfolk returned an indictment charging Williams with the possession of ammunition after previously having been convicted of a felony in violation of Code § 18.2-308.2.  The Commonwealth and Williams engaged in plea negotiations regarding the charge and, ultimately, reached an agreed resolution.  Williams agreed to plead guilty, and, in return, the Commonwealth agreed to jointly request a presentence report.  In the written plea agreement, which was signed by Williams, his attorney, and counsel for the Commonwealth, each party "reserve[d] the right to argue the appropriate disposition of th[is] case[] at sentencing."

Consistent with the practice in the Norfolk Circuit Court, Williams was presented with a form entitled "Advice to Defendants Pleading Guilty."  The form confirms the charge or charges that an accused faces, the charges to which he has agreed to plead guilty, that he has had an opportunity to fully discuss the potential plea with counsel, that he understands the plea agreement, and that he is "freely and voluntarily" pleading guilty to the listed offense(s).

Among other things, the form also informs a defendant of the maximum sentence for the crimes charged.  In Williams' case regarding his possession of ammunition after having been previously been convicted of a felony, the form indicated that the maximum amount of incarceration he faced was five years.

The form also advises a defendant that, by pleading guilty, he is waiving certain rights.  Specifically, the form notes that a guilty plea waives a defendant's "right to a jury trial," "right to refuse to testify," "right to have the witnesses against [him] testify in open court," "right to defend [himself]," and "right to appeal the decision of the court."  The form makes clear that, by pleading

guilty, a defendant "waive[s] all preceding non-jurisdictional defects, including constitutional claims."

Williams initialed each page of the form, and signed it, indicating that he had "read every item in this document, line by line, or if [he was unable] to read, [his] attorney had read it to [him], line by line." Williams also acknowledged that he fully understood the contents of the form. The form was admitted as Defense Exhibit 1 at the September 24, 2015 guilty plea hearing.

In addition to being presented with the written plea agreement and the advice form at the guilty plea hearing, the trial court was presented with a summary of the evidence. It then conducted a guilty plea colloquy with Williams. Among other things, the trial court confirmed that Williams had read and understood the advice form, that he had reviewed it with his attorney, and that Williams was pleading guilty to the charge because he was, in fact, guilty of the charge. Based on the evidence presented, including the colloquy, the trial court accepted the guilty plea, ordered a presentence report, and set a date for the sentencing hearing.

## II. March 16, 2016 Indictments

### A. November 20, 2015 Offenses

On March 16, 2016, the grand jury of the City of Norfolk returned indictments charging that, on November 20, 2015, Williams maliciously wounded Raymond Watkins with the intent to maim, disfigure, disable or kill him in violation of Code § 18.2-51.2 and that Williams' actions caused Watkins to be severely injured and to suffer permanent and significant physical impairment, used a firearm in the commission of a felony in violation of Code § 18.2-53.1,[1] committed two counts of possessing a firearm after having been previously convicted of a violent felony in

---

[1] Williams previously had been convicted of use of a firearm in the commission of a felony, and thus, was subject to the enhanced penalty provisions of Code § 18.2-53.1 if convicted of this offense.

violation of Code § 18.2-308.2, assaulted and battered Perry Sellers in violation of Code § 18.2-57, and brandished a firearm in violation of Code § 18.2-282.

### B. January 5, 2016 Offenses

On March 16, 2016, the grand jury of the City of Norfolk also returned indictments charging that, on January 5, 2016, Williams forged a public record in violation of Code § 18.2-168 and unlawfully used the identifying information of another person to avoid summons, arrest or prosecution or to impede a criminal investigation in violation of Code § 18.2-186.3(B1).

The Commonwealth and Williams engaged in plea negotiations regarding the March 16, 2016 indictments and, ultimately, reached an agreed resolution. Williams agreed to plead guilty to one count of assault and battery in violation of Code § 18.2-57, a reduced charge of malicious wounding in violation of Code § 18.2-51, one count of use of a firearm in the commission of a felony in violation of Code § 18.2-53.1 that would be considered a first offense, two counts of possession of a firearm after previously having been convicted of a violent felony in violation of Code § 18.2-308.2, and forgery of a public record in violation of Code § 18.2-168. In addition to reducing the aggravated malicious wounding charge and the use of a firearm charge, the Commonwealth agreed to move to *nolle prosequi* the brandishing and providing false information charges. As a condition of the plea agreement, the trial court was required to request a presentence report. In addition to these terms, the written plea agreement, which was signed by Williams, his attorney, and counsel for the Commonwealth, provided that "[t]here is no agreement on the defendant's sentence."

Consistent with the practice in the Norfolk Circuit Court, Williams again was presented with a form entitled "Advice to Defendants Pleading Guilty." As before, the form confirmed the charges against Williams, the potential sentences he faced, his understanding of the situation, his consultation with counsel, his waiver of certain rights, and that he was guilty of the charges to

- 4 -

which he was pleading guilty. Williams initialed each page of the form, and signed it, indicating that he had "read every item in this document, line by line, or if [he was unable] to read, [his] attorney had read it to [him], line by line." The form was admitted as Defense Exhibit 1 at the July 27, 2016 guilty plea hearing.

In addition to being presented with the written plea agreement and the advice form at the guilty plea hearing, the trial court was presented with a summary of the evidence. It then conducted a guilty plea colloquy with Williams. Among other things, the trial court confirmed that Williams had read and understood the advice form, that he had reviewed it with his attorney, and that Williams was pleading guilty to the charges because he was, in fact, guilty of the charges.

Based on the evidence presented, including the colloquy, the trial court accepted the guilty pleas, ordered a presentence report, and set a date for the sentencing hearing. Although the trial court noted that the sentencing proceedings were to be considered separate proceedings, it set the sentencing hearing for the six convictions stemming from the March 16, 2016 indictments for the same day and time as the sentencing hearing for the conviction stemming from the September 2, 2015 indictment.

### III. Sentencing Hearing

At the sentencing hearing, the trial court received the relevant sentencing guidelines worksheet for the offenses. As calculated, the guidelines worksheet reflected that Williams was guilty of use of a firearm in the commission of a felony as a second offense as opposed to the reduced charge to which he had pled, namely, use of a firearm in the commission of a felony as a first offense. Based on the worksheets, the guidelines recommendation for the offenses, which were affected by the mandatory minimum sentences for the use of a firearm in the commission of a felony and the two convictions for possession of a firearm by a person who has previously been convicted of a violent felony, resulted in a sentencing range of fifteen years to fifteen years, ten

- 5 -

months, with a midpoint of fifteen years. The Commonwealth acknowledged that, if the guidelines had been calculated using the crime to which Williams actually had pled– use of a firearm in the commission of a felony as a first offense– the midpoint of the guidelines range would change to thirteen years, three months, but the high end of the range would remain fifteen years, ten months.

The trial court received a victim impact statement, a written statement from Williams, and heard the testimony of Williams' sister. She testified that Williams had long had problems with alcohol and bipolar disorder. Williams also made a statement on his own behalf.

The Commonwealth argued for a significant sentence in excess of the guidelines. In support, the Commonwealth noted a lengthy criminal history, dating back to when Williams was committed to the Department of Juvenile Justice. The Commonwealth stressed that Williams' criminal history included other crimes of violence and involving firearms. Finally, the Commonwealth noted that both sets of the instant offenses occurred when Williams was on bond for yet additional charges.

Williams, recognizing that the mandatory minimum sentences required an active sentence of thirteen years incarceration, asked the trial court only to impose a sentence of thirteen years incarceration. In support of this position, Williams stressed the evidence of his having mental health issues, that, if Williams served thirteen years, he would be in his forties when released, that, as related by his counsel, Williams "is clearly a different individual than the individual I met when I first represented him on the" ammunition charge, and that there was reason to believe that, despite his plea to malicious wounding, the shooting of the victim in this case was an accident. Although he argued for the thirteen-year sentence, Williams never argued that the longer sentence sought by the Commonwealth was outrageous or represented something beyond the bounds of the trial court's discretion.

Consistent with the mandatory minimum sentences required by the relevant statutes, the trial court sentenced Williams to three years active incarceration on the use of a firearm in the commission of a felony charge and five years on each count of possession of a firearm after having been previously convicted of a violent felony (ten years total on the two counts). The trial court sentenced Williams to five years incarceration on the possession of ammunition charge, five years incarceration on the forgery of a public document charge, and twelve months in jail on the assault and battery charge, but suspended the entirety of those sentences on conditions not germane to this appeal. Finally, the trial court sentenced Williams to twenty years incarceration on the malicious wounding charge, but suspended seventeen years of that sentence on conditions not germane to this appeal. Accordingly, the term of active incarceration imposed by the trial court was sixteen years, which was two months more than the high end of the range recommended by the guidelines.[2]

On appeal, Williams challenges "the three year active period of confinement imposed for the offense of malicious wounding." He argues that the "trial court abused its discretion by imposing a sentence which exceeded the mandatory minimum sentence of thirteen years" required by the various firearm convictions. Thus, Williams contends that it was an abuse of discretion for the trial court to sentence him to any period of active incarceration, even one day, for his malicious shooting of another human being.

---

[2] The trial court noted on the guidelines worksheet that the upward departure from the recommended sentencing range was that Williams was on bond at the time he committed the malicious wounding.

ANALYSIS[3]

"We review [a] trial court's sentence for abuse of discretion." Johnson v. Commonwealth, 63 Va. App. 175, 181, 755 S.E.2d 468, 471 (2014) (quoting Valentine v. Commonwealth, 18 Va. App. 334, 339, 443 S.E.2d 445, 448 (1994)).  The Supreme Court, in an uninterrupted line of decisions, repeatedly has held that a trial court does not abuse its sentencing discretion when it sentences a defendant within the statutory range that the General Assembly has established for the offense or offenses.  See, e.g., Alston v. Commonwealth, 274 Va. 759, 771-72, 652 S.E.2d 456, 463 (2007); Rawls v. Commonwealth, 272 Va. 334, 351, 634 S.E.2d 697, 706 (2006); Williams v. Commonwealth, 270 Va. 580, 584, 621 S.E.2d 98, 100 (2005); Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977).  In 2016, the Supreme Court reaffirmed this principle, explaining that

> [a] Virginia trial court clearly acts within the scope of its sentencing authority when it chooses a point within the permitted statutory range at which to fix punishment.  In cases where the argument on appeal is simply a challenge to the duration of imprisonment, we have consistently held that the sentencing statutes define the outer boundaries of the bell-shaped curve of reasonableness.  Consequently, when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion.  In this respect, our view adheres to the general proposition that once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end.

---

[3] In all cases, we seek "the best and narrowest ground available" for resolving a case. Armstead v. Commonwealth, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010).  Given that even Williams recognizes that the merits of his appellate argument repeatedly have been addressed and rejected in the prior decisions of this Court and the Supreme Court, we conclude that reaching the merits is the best and narrowest ground. See Abdo v. Commonwealth, 64 Va. App. 468, 473 n.1, 769 S.E.2d 677, 679 n.1 (2015) (finding that, in the appropriate circumstances, resolving a case on the merits can represent the best and narrowest ground).  Accordingly, we do not reach the question of whether doing nothing more than arguing for a lesser sentence is adequate to preserve an argument that a sentence within the statutory range is so far beyond the pale as to constitute an abuse of discretion.

Minh Duy Du v. Commonwealth, 292 Va. 555, 564-65, 790 S.E.2d 493, 499 (2016) (internal quotation marks and citations omitted).

Williams acknowledges that this has been the consistent position of the Supreme Court, but argues that "it is long past time to reconsider and discard the dated doctrine that a trial court's sentence will be presumed reasonable so long as it does not exceed a statutorily imposed maximum." In support of this argument, Williams first states that the first Supreme Court cases that applied the principle involved jury verdicts, and thus, the "rule sprang from reluctance on the part of the Virginia Supreme Court to second-guess jury verdicts" and should not be applied to bench trials. Williams supplements this argument by asserting that Virginia is only one of ten states to apply the rule with the other forty states "permit[ting] appellate review of the reasonableness of sentencing whether or not it exceeds the maximum established by statute."[4]

Whatever the relative merits of these arguments, our recognition of the appropriate role of an intermediate appellate court precludes us from doing what Williams asks. "'[W]e are bound by decisions of the Supreme Court of Virginia and are without authority to overrule' them." Vay v. Commonwealth, 67 Va. App. 236, 258 n.6, 795 S.E.2d 495, 505 n.6 (2017) (quoting Roane v. Roane, 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991)). Thus, even if we thought Williams' arguments for overturning binding precedent had merit and that sentencing a repeat violent offender to a term of active incarceration for maliciously shooting another human

---

[4] In his review of the processes employed by other states, Williams notes that several states have statutes that expressly authorize appellate courts to consider whether a term-of-years sentence within the range set by the legislature for the offense can constitute an abuse of discretion in a specific case. Virginia has no such statute. Because we assume that the General Assembly is aware of the prior decisions of this Court and the Supreme Court, Washington v. Commonwealth, 46 Va. App. 276, 281-82, 616 S.E.2d 774, 777 (2005) (*en banc*), we conclude that the absence of such a Virginia statute represents the General Assembly's agreement with the existing case law.

being could constitute an abuse of discretion, we lack the authority to grant Williams the relief he seeks.[5]

CONCLUSION

In our system, the General Assembly has the power to set punishments for criminal offenses. Whether specifically set penalties, ranges of penalties, or ranges of penalties that include mandatory minimum penalties, the setting of the appropriate potential punishments is wholly a legislative function. The role of the judicial branch is to evaluate individual cases and offenders in order to discern the appropriate sentence for each offense from the menu of choices provided by the General Assembly. In Virginia, the discretion to make these evaluations is vested where the judicial branch comes into the closest contact with the offender, his crimes, and the victims–the trial court. Unless a trial court strays from the range set by the General Assembly, Virginia's appellate courts will not second-guess the trial court's exercise of judgment regarding the appropriate punishment. For these reasons, the judgment of the trial court in this matter is affirmed.

<u>Affirmed.</u>

---

[5] Even if the Supreme Court cases did not compel this result, the prior decisions of this Court would. We have held repeatedly that "we will not interfere with the sentence so long as it was within the range set by the legislature for the particular crime of which the defendant was convicted." Scott v. Commonwealth, 58 Va. App. 35, 46, 707 S.E.2d 17, 23 (2011) (internal quotation marks and citations omitted). Because prior panels of this Court have rejected Williams' argument in published opinions, we are bound to follow those opinions under the inter-panel accord doctrine. Vay, 67 Va. App. at 257, 795 S.E.2d at 505.