UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Decker and Russell
Argued at Virginia Beach, Virginia


CREICHUAN GARRETT

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1931-16-1                      JUDGE WESLEY G. RUSSELL, JR.
                                                    SEPTEMBER 5, 2017
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Pursuant to a plea agreement, Creichuan Garrett, appellant, pled guilty to two counts of

statutory burglary, two counts of grand larceny, and one count of felony failure to appear.  On

appeal, Garrett concedes that he is guilty of the charged offenses and only argues that the trial court

abused its discretion in sentencing him to a total active term of incarceration of four years and six

months for the five convictions.  We disagree and affirm.

BACKGROUND

There is no dispute that Garrett committed the charged offenses.  He pled guilty in the trial

court and, to his credit, explicitly accepted responsibility for his actions.  Accordingly, we need not

recite all of the facts regarding his various offenses.  Rather, because he only challenges his

sentence on appeal, we recite only those facts germane to his appellate argument.

--------

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The Commonwealth and Garrett engaged in plea negotiations about the five charges and reached an agreement regarding them. Garrett agreed: (1) to plead guilty to the five charges; (2) to "pay restitution" to the victims of his crimes; (3) to "have no contact" with the victims, and (4) that he would be banned from a "one-block radius of" the area in which he had committed the offenses. In return, the Commonwealth agreed "to cap Defendant's active sentence at either six (6) years or seven (7) months below the high end of the properly calculated sentencing guidelines range, whichever is higher." As part of the agreement, Garrett and the Commonwealth jointly requested that the trial court order a presentence report.[1]

Consistent with the practice in the Norfolk Circuit Court, Garrett was presented with a form entitled "Advice to Defendants Pleading Guilty." The form confirms the charges an accused faces, the charges to which he has agreed to plead guilty, that he has had an opportunity to fully discuss the potential plea with counsel, that he understands the plea agreement, and that he is "freely and voluntarily" pleading guilty to the listed offenses.

Among other things, the form also informs a defendant of the maximum sentence for the crimes charged. In Garrett's case, the form indicated that the maximum amount of incarceration he faced was twenty years for each of the statutory burglaries, twenty years for each of the grand larcenies, and five years for the felony failure to appear, for a total of eighty-five years of potential imprisonment.

The form also advises a defendant that, by pleading guilty, he is waiving certain rights. Specifically, the form notes that a guilty plea waives a defendant's "right to a jury trial," "right to refuse to testify," "right to have the witnesses against [him] testify in open court," "right to defend [himself]," and "right to appeal the decision of the court." The form makes clear that, by pleading

[1] These terms are reflected in the written plea agreement that was signed by the defendant, his counsel, and counsel for the Commonwealth. The written agreement was presented to and eventually accepted by the trial court.

guilty, a defendant "waive[s] all preceding non-jurisdictional defects, including constitutional claims."

Garrett initialed each page of the form, and signed it, indicating that he had "read every item in this document, line by line, or if [he was unable] to read, [his] attorney had read it to [him], line by line." Garrett also acknowledged that he fully understood the contents of the form. The parties presented the form to the trial court at the guilty plea hearing.

In addition to being presented with the written plea agreement and the advice form at the guilty plea hearing, the trial court was presented with a summary of the evidence. It then conducted a guilty plea colloquy with Garrett. In addition to ascertaining that Garrett could read and write, that he had consulted with counsel before entering into the plea agreement, that he was satisfied with his counsel's performance, and that the plea was freely and voluntarily entered, the trial court asked specific questions regarding how the plea agreement would affect Garrett's sentence. Specifically, the following exchange occurred:

COURT: There's a Plea Agreement that provides *the maximum sentence you will receive will be either six years in prison or seven months below the high end of the properly calculated sentencing guidelines, whichever is higher*, and that you'll have to pay restitution and stay off certain blocks up in Park Place. *Is that your understanding of the Plea Agreement*?

GARRETT: *Yes, sir.*

COURT: Did you read, sign and understand it?

GARRETT: Yes, sir.

. . . .

COURT: *What were you told the high end of the sentencing guidelines is?*

GARRETT: *Six and a half years.*

COURT: Is that what you told him, [defense counsel]?

- 3 -

| DEFENSE COUNSEL: | It was six years, Your Honor. |
|---|---|

| COURT: | *Do you understand when the probation officer calculates the guidelines, he may come across information that [the lawyers] didn't know about and that the high end could be either higher or lower than what [your lawyer] has told you?* |
|---|---|

| GARRETT: | *Yes, sir.* |
|---|---|

| COURT: | He usually does a good job in calculating. I just wanted to advise you. Mistakes can happen though. Do you understand that? |
|---|---|

| GARRETT: | Yes, sir. |
|---|---|

(Emphasis added). Based on the evidence presented, including the colloquy, the trial court accepted the guilty pleas, ordered a presentence report, and set a date for the sentencing hearing.

At the sentencing hearing the trial court received the sentencing guidelines worksheet that had been prepared. Neither party objected to the guidelines worksheet or the calculations that went into determining the guidelines recommendation. Under the guidelines, the recommended range of incarceration was from a low of three years, eight months to a high of six years, seven months, with a midpoint recommendation of four years, six months.

The Commonwealth requested that Garrett receive a sentence of six years of incarceration, the maximum amount allowed under the plea agreement. The Commonwealth argued that a six-year sentence was appropriate given Garrett's "criminal history . . . [which was] replete with burglaries and larcenies essentially from the time he was a juvenile until now. It's a pattern of behavior that has not changed or altered even though" Garrett previously had been committed to the Department of Juvenile Justice.

In response, Garrett argued that a two-year sentence was appropriate, stressing that he was only nineteen years old at the time of the offenses and had accepted responsibility for his

actions. Garrett acknowledged his criminal history, but argued that there were reasons to think that Garrett's future would be better than his past. Although he argued for the two-year sentence, Garrett never argued that the six-year sentence sought by the Commonwealth (and countenanced by his plea agreement) was outrageous or represented something beyond the bounds of the trial court's discretion.

The trial court sentenced Garrett to one year of incarceration for each burglary conviction, one year of incarceration for each grand larceny conviction, and six months of incarceration for the failure to appear conviction for a total term of active incarceration of four years and six months, which represented the midpoint of the sentencing guidelines recommendation. Accordingly, the term of incarceration imposed by the trial court was eighty years and six months less than the statutory maximum for the offenses and one and a half years less than the maximum provided for in the parties' plea agreement.

On appeal, Garrett challenges the four-year-and-six-month sentence. Specifically, he contends on brief that the trial court abused its discretion because it did not "adequately take into account [Garrett's] mental health, drug dependency, and immaturity at the time of the offenses . . ." and "[Garrett's] guilty pleas in conjunction with the insight and maturity evidenced in his statement in allocution reflected his true contrition for his conduct."[2]

---

[2] The presentence report contains references to Garrett undergoing substance abuse treatment while in the custody of DJJ and receiving treatment at various times for ADHD and "bipolar." However, in his argument before the trial court at the sentencing hearing, Garrett made no express reference to either his mental health status or drug dependency.

ANALYSIS[3]

"We review [a] trial court's sentence for abuse of discretion." Johnson v.

Commonwealth, 63 Va. App. 175, 181, 755 S.E.2d 468, 471 (2014) (quoting Valentine v.

Commonwealth, 18 Va. App. 334, 339, 443 S.E.2d 445, 448 (1994)). The Supreme Court, in an

uninterrupted line of decisions, repeatedly has held that a trial court does not abuse its sentencing

discretion when it sentences a defendant within the statutory range that the General Assembly

has established for the offense or offenses. See, e.g., Alston v. Commonwealth, 274 Va. 759,

771-72, 652 S.E.2d 456, 463 (2007); Rawls v. Commonwealth, 272 Va. 334, 351, 634 S.E.2d

697, 706 (2006); Williams v. Commonwealth, 270 Va. 580, 584, 621 S.E.2d 98, 100 (2005);

Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977). In 2016, the Supreme

Court reaffirmed this principle, explaining that

> [a] Virginia trial court clearly acts within the scope of its
> sentencing authority when it chooses a point within the permitted
> statutory range at which to fix punishment. In cases where the
> argument on appeal is simply a challenge to the duration of
> imprisonment, we have consistently held that the sentencing
> statutes define the outer boundaries of the bell-shaped curve of
> reasonableness. Consequently, when a statute prescribes a
> maximum imprisonment penalty and the sentence does not exceed
> that maximum, the sentence will not be overturned as being an
> abuse of discretion. In this respect, our view adheres to the general
> proposition that once it is determined that a sentence is within the
> limitations set forth in the statute under which it is imposed,
> appellate review is at an end.

---

[3] In all cases, we seek "the best and narrowest ground available" for resolving a case. Armstead v. Commonwealth, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010). Given that even Garrett recognizes that the merits of his appellate argument repeatedly have been addressed and rejected in the prior decisions of this Court and the Supreme Court, we conclude that reaching the merits is the best and narrowest ground. See Abdo v. Commonwealth, 64 Va. App. 468, 473 n.1, 769 S.E.2d 677, 679 n.1 (2015) (finding that, in the appropriate circumstances, resolving a case on the merits can represent the best and narrowest ground). Accordingly, we do not reach the questions of whether Garrett sufficiently raised his appellate argument in the trial court or whether Garrett's plea agreement, which he acknowledged in the trial court allowed for a longer term of active incarceration than he ultimately received, waived the argument he raises on appeal.

Minh Duy Du v. Commonwealth, 292 Va. 555, 564-65, 790 S.E.2d 493, 499 (2016) (internal quotation marks and citations omitted).

Garrett acknowledges that this has been the consistent position of the Supreme Court, but argues that "it is long past time to reconsider and discard the dated doctrine that a trial court's sentence will be presumed reasonable so long as it does not exceed a statutorily imposed maximum." In support of this argument, Garrett first states that the first Supreme Court cases applying the principle involved jury verdicts, and thus, the "rule sprang from reluctance on the part of the Virginia Supreme Court to second-guess jury verdicts" and should not be applied to bench trials. Garrett supplements this argument by asserting that Virginia is only one of ten states to apply the rule with the other forty states "permit[ting] appellate review of the reasonableness of sentencing whether or not it exceeds the maximum established by statute."[4]

Whatever the relative merits of these arguments, our recognition of the appropriate role of an intermediate appellate court precludes us from doing what Garrett asks. "'[W]e are bound by decisions of the Supreme Court of Virginia and are without authority to overrule' them." Vay v. Commonwealth, 67 Va. App. 236, 258 n.6, 795 S.E.2d 495, 505 n.6 (2017) (quoting Roane v. Roane, 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991)). Thus, even if we thought Garrett's arguments for overturning binding precedent had merit and that sentencing a repeat offender to a term of incarceration that represented the midpoint of the sentencing guidelines recommendation, was within the terms of his plea agreement, and represented less than 6% of the total time

---

[4] In his review of the processes employed by other states, Garrett notes that several states have statutes that expressly authorize appellate courts to consider whether a term-of-years sentence within the range set by the legislature for the offense can constitute an abuse of discretion in a specific case. Virginia has no such statute. Because we assume that the General Assembly is aware of the prior decisions of this Court and the Supreme Court, Washington v. Commonwealth, 46 Va. App. 276, 281-82, 616 S.E.2d 774, 777 (2005) (*en banc*), we conclude that the absence of such a Virginia statute represents the General Assembly's agreement with the existing case law.

authorized by statute could constitute an abuse of discretion, we lack the authority to grant

Garrett the relief he seeks.[5]

CONCLUSION

In our system, the General Assembly has the power to set punishments for criminal offenses. Whether specifically set penalties or ranges of penalties, the setting of the appropriate potential punishments is wholly a legislative function. The role of the judicial branch is to evaluate individual cases and offenders in order to discern the appropriate sentence for each offense from the menu of choices provided by the General Assembly. In Virginia, the discretion to make these evaluations is vested where the judicial branch comes into the closest contact with the offender, his crimes, and the victims–the trial court. Unless a trial court strays from the range set by the General Assembly, Virginia's appellate courts will not second-guess the trial court's exercise of judgment regarding the appropriate punishment. For these reasons, the judgment of the trial court in this matter is affirmed.

<u>Affirmed.</u>

---

[5] Even if the Supreme Court cases did not compel this result, the prior decisions of this Court would. We have repeatedly held that "we will not interfere with the sentence so long as it was within the range set by the legislature for the particular crime of which the defendant was convicted." <u>Scott v. Commonwealth</u>, 58 Va. App. 35, 46, 707 S.E.2d 17, 23 (2011) (internal quotation marks and citations omitted). Because prior panels of this Court have rejected Garrett's argument in published opinions, we are bound to follow those opinions under the inter-panel accord doctrine. <u>Vay</u>, 67 Va. App. at 257, 795 S.E.2d at 505.