UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Huff, Judges Beales and Decker
Argued at Salem, Virginia


RANDY D. ROSS

                                                    MEMORANDUM OPINION* BY
v.       Record No. 1190-17-3                       CHIEF JUDGE GLEN A. HUFF
                                                    OCTOBER 30, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Glenn L. Berger (Berger & Thornhill, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Randy D. Ross ("appellant") appeals his sentence imposed by the Circuit Court of Bedford

County ("trial court").  On appeal, appellant contends that the trial court erred by imposing a

sentence that, appellant claims, violates the Eighth Amendment to the United States Constitution

and controlling case law.  For the following reasons, this Court affirms appellant's sentence.

I.  BACKGROUND

On appeal, this Court considers "the evidence and all reasonable inferences flowing from

that evidence in the light most favorable to the Commonwealth," the prevailing party below.

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting

Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)).  So viewed, the

evidence shows that in 1999 appellant was convicted, pursuant to a guilty plea, of capital murder,

robbery, and using a firearm to commit murder and robbery.  The crime in question took place when

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

appellant was sixteen years old. He was sentenced to two life sentences without the possibility of parole for the robbery and capital murder convictions, and to eight years for the firearm offenses, for a total sentence of two life terms plus eight years.

In 2013, appellant filed a habeas corpus petition in the United States District Court for the Western District of Virginia, seeking relief from his two life sentences based on the United States Supreme Court's holding in Miller v. Alabama, 567 U.S. 460 (2012). On January 25, 2016, the Supreme Court decided Montgomery v. Louisiana, 136 S. Ct. 718 (2016), and declared that the holding from Miller was retroactive. On August 30, 2016, the federal district court granted appellant's writ and ordered resentencing because his original case was settled via a plea agreement and there was no evidence in the record that the trial judge "considered any factors relating to youthful immaturity or incorrigibility."

The trial court held a resentencing hearing on June 27, 2017, and both sides presented testimony from a number of witnesses. The probation officer who prepared the presentencing report testified about its contents, including appellant's statements about his prior family life and the circumstances surrounding the robbery and murder. The victim's mother and father testified about the terrible impact of the murder on their family, and a captain from the Bedford County Sheriff's Department testified about the character of the victim, a sixteen-year-old boy who had reluctantly agreed to give appellant, appellant's girlfriend, and her two children a ride in his car when they kept pressing him for a ride.

Appellant's former juvenile probation officer testified about his childhood involvement with the justice system, including his placement in a number of foster homes, his repeated interactions with law enforcement, his repeated absconding from foster homes and a rehabilitative group home, and his placement in juvenile detention. Appellant's mother testified about his unstable home, poverty, and her criminal involvement as well as her husband's violence, drug use, and frequent

theft of money from appellant and his siblings. The director of food services from Keen Mountain Correctional Center testified about appellant's solid work ethic and success as a food service worker during his incarceration.

Finally, a forensic psychologist prepared a written report and testified at length about appellant's immaturity, lack of executive function, inability to anticipate consequences of his actions, and his need for social acceptance to replace his dysfunctional family. She also testified that appellant's behavior surrounding the crimes was characteristic of the kind of youth and immaturity that the Supreme Court was concerned about in the Miller decision and other decisions regarding juvenile sentencing. She testified that at the time of the murder, appellant displayed all of the characteristics of an adolescent whose brain had not yet fully developed, but that his prison record reflected the behavior of an adult, with a fully developed brain.

After hearing all the evidence and a long statement from appellant expressing his remorse for the murder, the trial court imposed a sentence of ninety-one years for robbery, and a sentence of life in prison, suspended after serving ninety-one years, for capital murder. These sentences were to run concurrently, but consecutive to the eight years for the firearms charges, for a total active sentence of ninety-nine years. This appeal followed.

## II. STANDARD OF REVIEW

As a general rule, this Court reviews a trial court's sentencing decision for abuse of discretion. Given this deferential standard of review, we will not interfere with the sentence so long as it "was within the range set by the legislature" for the particular crime of which the defendant was convicted. Johnson v. Commonwealth, 63 Va. App. 175, 181, 755 S.E.2d 468, 471 (2014) (quoting Jett v. Commonwealth, 34 Va. App. 252, 256, 540 S.E.2d 511, 513 (2001)). "To the extent that appellant's argument . . . raises a question of constitutional interpretation, however, that issue is reviewed *de novo*." Id. at 182, 755 S.E.2d at 471 (citing Lawlor v. Commonwealth, 285 Va. 187,

240, 738 S.E.2d 847, 877 (2013)). In conducting its review, this Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).

## III. ANALYSIS

Appellant raises four assignments of error, two of which challenge his sentence for robbery and two of which challenge his sentence for murder. In each assignment, appellant contends that the trial court acted contrary to United States Supreme Court case law regarding sentencing for juveniles. Because the trial court complied with existing precedent from the Virginia Supreme Court and the United States Supreme Court, the sentence was appropriate.

### A. Angel is binding on this Court.

In his first assignment of error, appellant contends that the trial court erred by "refusing to reject" the Virginia Supreme Court's holding in Angel v. Commonwealth, 281 Va. 248, 704 S.E.2d 386, cert. denied, 565 U.S. 920 (2011). Appellant specifically asserts that the relevant holding in Angel—that Virginia's geriatric parole process grants defendants a "meaningful opportunity for release based on maturity and rehabilitation," id. at 275, 704 S.E.2d at 402—is in conflict with the United States Supreme Court's later decisions in Miller v. Alabama and Montgomery v. Louisiana.

The relief appellant requests is beyond the authority of this Court. "Only decisions of the United States Supreme Court can supersede binding precedent from the Virginia Supreme Court." Anderson v. Commonwealth, 48 Va. App. 704, 712 n.2, 634 S.E.2d 372, 376 n.2 (2006). The United States Supreme Court denied certiorari when Angel was challenged on direct appeal, and it reversed the latest challenge to Angel through a habeas proceeding. See Virginia v. LeBlanc, 137 S. Ct. 1726, 1729 (2017) (finding that "the Virginia trial court's ruling, resting on the Virginia Supreme Court's earlier ruling in Angel, was not objectively unreasonable in light of this Court's current case law"). Accordingly, Angel is binding on this Court. The law in Virginia remains that

geriatric parole provides prisoners who committed their crimes as juveniles with the "meaningful opportunity" for release that the United States Supreme Court said in Graham is required by the Eighth Amendment. Angel, 281 Va. at 275, 704 S.E.2d at 402.

B. Angel controls any review of the robbery sentence.

In his second assignment of error, appellant claims that his ninety-one-year sentence for robbery violates the holding in Graham v. Florida, 560 U.S. 48 (2010), which prohibits sentencing juveniles to life without the possibility of parole for crimes other than homicide. The trial court, however, did not sentence appellant to life in prison for robbery, it sentenced him to ninety-one years. Even assuming without deciding that the ninety-one-year term is the functional equivalent of a life sentence, Virginia's geriatric parole statute still applies to appellant's robbery sentence. Code § 53.1-40.01. See also Johnson v. Commonwealth, 292 Va. 772, 781, 793 S.E.2d 326, 331 (2016) (reaffirming the holding in Angel that geriatric release under Code § 53.1-40.01 provides a "meaningful opportunity for release that is akin to parole"). As the Virginia Supreme Court reasoned in Johnson, appellant was not sentenced to life in prison without the possibility of parole, he was only sentenced to life in prison. Id. Like the defendant in Johnson, the possibility exists that appellant's sentence of life in prison for the robbery conviction will convert to a sentence of roughly forty-two years when he reaches age sixty. Accordingly, this Court has no grounds on which to find that the ninety-one-year sentence for robbery violates the holding in Graham.

C. Miller (and thus Montgomery) do not apply.

In his last two assignments of error, appellant argues that the trial court erred by ignoring the holdings and procedural requirements in Miller and Montgomery when it sentenced him to "the

functional equivalent" of life in prison without parole for capital murder.[1]  Appellant's argument fails, however, because appellant was not subjected to a mandatory life-without-parole sentence.

The relevant holding from Miller is that juvenile offenders cannot be subjected to *mandatory* life without parole.  567 U.S. at 465.  Instead, while not categorically prohibiting life sentences without possibility of parole, the Miller decision requires a sentencing official to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."  Id. at 480.  The Montgomery decision declared that "Miller announced a substantive rule of constitutional law" which must be given retroactive effect in state collateral review proceedings.  136 S. Ct. at 736.  Montgomery also reiterated and explained the procedural element of the Miller decision, that it "requires a sentencer to consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence."  Id.

The Virginia Supreme Court has already examined the extent of Miller's and Montgomery's effect on sentencing in Virginia, noting that "[b]oth cases addressed *mandatory* life sentences without the possibility of parole."  Jones v. Commonwealth, 293 Va. 29, 56, 795 S.E.2d 705, 721 (2017) (Jones II).  The Supreme Court's decision in Jones II expressly rejected the suggestion by the dissent in that case[2] that Virginia should expand Miller's applicability to include discretionary life-without-parole sentences.  Id. at 57, 795 S.E.2d at 721.  Appellant argues that this Court should adopt the position of the dissent in Jones II:  "[J]uveniles in Virginia facing a sentence of life

---

[1] Because capital murder is a Class 1 felony, geriatric parole is not available.  Code § 53.1-40.01.  Accordingly, the holding in Angel does not resolve appellant's last two assignments of error.

[2] "Montgomery made it clear that the focus of Miller was not that only mandatory life sentences are unconstitutional; rather, it is that the Eighth Amendment requires individualized consideration before a juvenile can be sentenced to life in prison without the possibility of parole."  Jones II, 293 Va. at 61, 795 S.E.2d at 724 (Powell, J., dissenting).

without parole should be afforded a <u>Miller</u> hearing, for the reasons stated in <u>Montgomery</u>."  <u>Id.</u> at 73 n.11, 795 S.E.2d at 730 n.11 (Powell, J., dissenting).  This Court declines to do so.  As in <u>Angel</u>, we have no authority to do so even if we agreed with appellant.

Furthermore, even if this Court could do as appellant requests, and as the dissent in <u>Jones II</u> argues, we would still come to the same conclusion.  By declaring mandatory life-without-parole sentences unconstitutional, <u>Miller</u> prohibited the imposition of such sentences unless the sentencing official holds a hearing to consider mitigating factors, including "youth and its attendant characteristics," <u>Montgomery</u>, 136 S. Ct. at 736, and "transient immaturity," <u>id.</u> at 735.  A sentence of life without possibility of parole may still be imposed on a juvenile offender as long as the court imposing it has considered all the factors necessary to "separate those juveniles who may be sentenced to life without parole from those who may not."  <u>Id.</u>  In <u>Miller</u>, the Court noted with concern some of the factors that were missed by mandatory sentencing schemes, including a defendant's "immaturity, impetuosity, and failure to appreciate risks and consequences . . . family and home environment . . . circumstances of the homicide offense . . . the way familial and peer pressures may have affected him . . . [and] inability to deal with police officers or prosecutors (including on a plea agreement)."  567 U.S. at 477-78.

In the present case, the trial court conducted a hearing before resentencing appellant.  At the hearing, the trial court heard extensive testimony regarding appellant's immaturity and desire to be liked, the dysfunctional nature of his family and search for social acceptance, his self-medication with contraband substances, and his disciplinary records in prison.  The court also heard testimony from appellant's mother about the drug use and domestic violence that appellant experienced growing up, the fact that his mother was in and out of jail, and that his stepfather stole from him to feed a drug habit.  The court heard extensive testimony from a clinical psychologist about appellant's feelings of isolation during his adolescence, and that his behavior was consistent with

the lack of maturity and lack of "executive function" common among adolescents. The psychologist also testified that all of the five factors mentioned in the Miller decision as indicators of "youth and immaturity" were present in appellant's life prior to the crime for which he was convicted. The psychologist also prepared a detailed written report which the trial judge was able to review before the hearing even took place.

In short, despite the fact that the Miller and Montgomery cases prohibit only *mandatory* life-without-parole sentences, and despite the fact that appellant did not face such a mandatory sentencing scheme, appellant was still afforded the protections specified in the Miller decision. He was given a hearing and in that hearing, he presented evidence of his youth and immaturity at the time of his offense—evidence that the judge was free to consider when determining his sentence.

Contrary to appellant's contention in his third assignment of error, nothing in the Supreme Court's decision in Miller or Montgomery requires a specific factual finding that appellant is "irreparably incorrigible" before pronouncing a sentence of life without parole.[3] The requirement is that the sentencing official "must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." Miller, 567 U.S. at 489. When the trial court holds a hearing, and the record shows that the defendant had the chance to present evidence about mitigating circumstances, "[a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). Nothing in the

---

[3] We recognize that recently the United States Court of Appeals for the Fourth Circuit noted that "a sentencing judge also violates Miller's rule any time it imposes a discretionary life-without-parole sentence on a juvenile homicide offender without first *concluding* that the offender's 'crimes reflect permanent incorrigibility,' as distinct from 'the transient immaturity of youth.'" Malvo v. Mathena, 893 F.3d 265, 274 (4th Cir. 2018) (emphasis added) (quoting Montgomery, 136 S. Ct. at 734). However, "[o]nly decisions of the United States Supreme Court can supersede binding precedent from the Virginia Supreme Court." Anderson, 48 Va. App. at 712 n.2, 634 S.E.2d at 376 n.2.

record shows that the trial court failed to adequately consider all of the evidence when it imposed the new active sentence of ninety-nine years in the penitentiary.

III.  CONCLUSION

The Virginia Supreme Court's decision in <u>Angel v. Commonwealth</u> is still binding on this Court, and Virginia's geriatric parole statute provides appellant with a meaningful opportunity for release on the sentence for the robbery conviction.  Therefore, his robbery sentence of ninety-one years does not violate United States Supreme Court precedent in <u>Graham v. Florida</u>.  Because the holdings in <u>Miller</u> and <u>Montgomery</u> prohibit only *mandatory* sentences of life without the possibility of parole, appellant's discretionary life sentence, suspended after ninety-one years, for capital murder, is not affected by those decisions.  Furthermore, given the fact that appellant was allowed to present evidence of his youth and immaturity at the time of his offense during his resentencing hearing, appellant was afforded all the protections required by <u>Miller</u> and <u>Montgomery</u>.  Therefore, this Court finds that the trial court did not abuse its discretion, and we affirm the sentence the appellant was given by the trial court in the resentencing hearing.

<u>Affirmed.</u>